UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

In the Matter of the Complaint

      Of                                                       5:23-CV-1475 (LEK/CBF)

JOHN ROGERS and NANCY LAPORTA ROGERS,
as Owners of 2002 22' Angler Vessel (HIN: ANGG008D202)
for Exoneration from or Limitation of Liability

_____

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Petitioners John Rogers and Nancy Laporta Rogers, ("Petitioners") as owners of a 2022

Angler Vessel, commenced this action for exoneration and limitation of liability pursuant to the

Limitation of Liability Act, Title 46 U.S.C. § 3501, and Supplemental Rule F of the

Supplemental Rules for Certain Admiralty and Maritime Claims. Dkt. No. 1 ("Complaint"). On

July 7, 2025, Petitioners filed a Motion for Summary Judgment, Dkt. No. 25 ("Motion"). On

August 28, 2025, Pamela M. Moynihan, and Paul F. Moynihan ("Claimants") filed a response in

opposition, Dkt. No. 28 ("Response"), and Petitioners filed a reply on September 15, 2025

("Reply").

For the reasons that follow, Petitioners' Motion is granted.

## II.      BACKGROUND

The following facts are undisputed, except where otherwise noted.

On June 6, 2021, Petitioners John Rogers and Nancy LaPorta Rogers took their vessel, a

2022 22' Angler ("Vessel"), out on Oneida Lake. Dkt. No. 25-3 ¶ 1 ("Petitioners' Statement of

Material Facts"). There were six people aboard the Vessel at the time of the incident: Petitioners

John Rogers and Nancy LaPorta Rogers, Claimants Pamela Moynihan and Claimant Paul Moynihan, and non-parties Albert Valerino and Lindsay Burnett. *Id.* ¶ 2.

"The Vessel departed the A&P Marina on Oneida Lake at approximately 11:00am with all of the aforementioned occupants onboard." *Id.* ¶ 3. Both the weather and water conditions that day were good, and the plan was to "go to the Wild Horse Bar & Grill, . . . on Oneida River, for lunch." *Id.* ¶ 4–5. The route to the restaurant "required the Vessel to pass under the Interstate 81 Bridge, which is in the vicinity where Oneida Lake meets the Oneida River." *Id.* ¶ 6.

After "the Vessel passed the Interstate 81 Bridge, it encountered a large wake from another vessel heading in the opposite direction." *Id.* ¶ 7; Dkt. No. 29 ¶ 7 ("Claimants' Statement of Material Facts"). The wake was created when the vessel heading in the opposite direction "gunned it," resulting in a large wave that hit Petitioners' Vessel within one to two seconds. *See* Petrs.' SMF ¶ 8–9; Claimants' SMF ¶ 8–9. The speed of Petitioners' vessel at the time of the impact with the wave, as well as its specific location, are disputed. *See* Claimants.' SMF ¶10–11.

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instruct courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, granting summary judgment is improper if there are genuinely disputed material facts. *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46

(2d Cir. 1991) ("Only when no reasonable trier of facts could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The nonmoving party may not rely on "mere conclusory allegations, speculation, or conjecture," *see Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) (quoting *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)), and must present more than a mere "scintilla of evidence" supporting its claims. *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and "draw all reasonable inferences in favor of the nonmoving party," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), and "eschew credibility assessments," *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a Court's duty in reviewing a motion for summary judgment is "carefully limited" to "finding genuine disputes of fact," "not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

Petitioners in the instant case are seeking exoneration under the Limitation of Liability Act. *See* Mot. at 3–7.

The Limitation of Liability Act, 46 U.S.C. § 30523 (the "Act"), permits an owner of a vessel to limit their liability to the value of the vessel if the casualty occurred "without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). Under the Act, an owner may also seek exoneration from a casualty which occurred on his vessel. *In re Cornfield*, 365 F. Supp. 2d 271, 276 (E.D.N.Y. 2004), *aff'd*, *Cornfield v. Cornfield*, 156 F. App'x 343 (2d Cir. 2005). The Act's protections apply with equal force to "parties engaged in maritime commerce" as well as "pleasure craft owners." *Id.* (citing *In re Guglielmo*, 897 F.2d 58, 59–60 (2d Cir. 1990)). When a "negligence claim is filed in response to a petition for . . . exoneration, [the] claimant carries the initial burden of establishing that negligence caused the injury." *Id.* (citing *In re Complaint of James Miller*, 00-CV-8328, (BSJ), 2003 WL 22097484, at *2 (S.D.N.Y. June 17, 2003)). To satisfy this burden, the claimant must demonstrate by a preponderance of the evidence that the owner of the vessel was negligent. *See In re Treanor*, 144 F. Supp.3d 381, 388 (E.D.N.Y. 2015).

### A. Negligence

Petitioners argue that they should be exonerated because they did not act negligently in such a manner that caused Petitioners injuries. Mot. at 3–7. Claimants counter arguing that Petitioner John Rogers negligently operated the Vessel "at an imprudent speed, failed to reasonably avoid a wake and did not warn the passengers of the impending collision with the wake." Resp. at 4–6. They further argue that he failed to keep a proper lookout. *Id.* at 6–7. The Court will address each of these arguments.

For negligence claims "governed by admiralty law. . . . [t]he common law rules of negligence apply." *Smith v. Mitlof*, 198 F. Supp. 2d 492, 501 (S.D.N.Y. 2002).[1] A claimant can

---

[1] As neither party contests the application of admiralty law to this case, the Court will assume without deciding that Oneida river is a 'navigable body of water' such that admiralty law applies.

thus establish a *prima facie* negligence claim if they can prove: "(i) the existence of a duty owed by the [petitioner] to the [claimant]; (ii) breach of that duty; (iii) proximate causation of the [claimaint's] injur[ies]; and (iv) damages." *Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 252 (S.D.N.Y. 2001). As neither party contests the issue of whether Petitioners owed Claimants a duty of care, the Court will limit its assessment of the negligence claim to the elements of breach and causation. *See generally* Mot.; Resp.

   *1. Breach*

  "[T]he owner of a ship in navigable waters owes to [his passengers] the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). This duty does not, however, require that a "shipowner [act as] an insurer of its passenger's safety. . . . [There must [in fact] be some failure to exercise due care before liability may be imposed." *See Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 75 (2d Cir. 1988) (citing *Moore v. American Scantic Line, Inc.*, 767, 768 (2d Cir. 1941)).

  Moreover, courts in this Circuit apply the *in extremis* doctrine in cases involving maritime casualty disputes. *See, e.g.*, *Nat'l Bulk Carriers v. United States*, 183 F.2d 405, 409 (2d Cir. 1950). The *in extremis* doctrine holds that when a vessel is put into sudden peril through no fault of her own, the captain will not be held liable even if he "has not maneuvered with perfect skill and persence [sic] of mind." *The Blue Jacket*, 144 U.S. 371, 382 (1892) (quoting The Bywell Castle, 4 Prob. Div. 219 (1892))

  The doctrine provides a lenient standard in determining whether or not a captain of a vessel breached his duty to his passengers. *See Grosse Ile Bridge Co. v. American Steamship Co.*, 302 F.3d 616, 625–26 (6th Cir. 2002). The *in extremis* doctrine does not prevent liability,

but reflects the principle that "less judgment is required in an emergency than when there is time to consider." *A. H. Bull S.S. Co. v. United States*, 34 F. 2d 614, 616 (2d Cir. 1929).

Under this deferential standard, the captain's actions are to be judged from the "viewpoint of the master on the bridge of the crippled ship." *See The Walter A. Luckenbach*, 14 F.2d 100, 103 (9th Cir. 1926). And, a court is only to find the captain liable if his acts "were so illy considered and so plainly wrong that a competent navigator would have rejected it, if placed in a like position." *Id.*

In this case, Claimants specifically argue that Petitioners breached their duty of care by: failing to avoid the wake and for failing to keep a proper look out. Resp. at 4–6. [2]

Starting with the first argument, Claimants specifically argue that Petitioner Rogers acted negligently when he failed to avoid the impending wake. Resp. at 4. Petitioners in their Motion for Summary Judgment argue to the contrary, that the *in extremis* doctrine applies, and that accordingly they did not breach their duty owed to Claimants. Mot. at 6–7. The Court agrees with Petitioners.

Here, it is undisputed that the Petitioners' vessel encountered a large wake one to two minutes after passing under the I-81 bridge into the Oneida river. *See* Petrs.' SMF ¶ 8–9; Claimants' SMF ¶ 8–9. The wake was created when a large boat that was moving parallel to the left of Petitioners' vessel "gunned it." *Id.* Within one to two seconds of the wake being produced, a large wave hit Petitioners' vessel causing the injuries that are the basis of this action. *Id.*; Dkt.

---

[2] The Court acknowledges that Claimants dispute the location of the vessel at the time of the accident. *See* Dkt. No. 29 ¶ 7 ("Claimants' Statement of Material Facts"). However, the Court does not find this dispute to be "genuine", elsewhere Claimants do not dispute the accuracy of Claimant Pamela Moynihan's testimony where she states that Petitioners' Vessel crossed under the bridge and encountered the other vessel within a minute or two. SMF ¶ 8; Claimants' SMF ¶ 8. The Court finds that there is not a genuine dispute over the location of the vessel at the time of the incident – it had crossed under the I-81 bridge and was in the Oneida River, as established in Ms. Moynihan's testimony.

No. 25-2 at 88–89 ("Pamela Moynihan's Deposition") (describing injuries).[3] At the moment when Petitioners' vessel was hit by the wake, it was in the Oneida River, and was next to a channel used by maritime traffic going the other direction, and a marina. *See* Dkt. No. 25-2 at 234–237 ("Expert Report").

On these facts, the Court cannot find that Petitioner John Rogers acted unreasonably in responding to the wake. First, the Court notes that Petitioners' vessel was *in extremis* when Petitioner John Rogers made his decision to move through the wave. The wave that impacted his vessel and allegedly caused injuries to Claimants was not of his own creation, but was solely the result of the acts of another vessel. *See* Petrs.' SMF ¶ 8–9. Petitioner John Rogers further had at most a couple of seconds to respond to the incoming wave, and he faced a decision of whether to turn his vessel into oncoming maritime traffic, into the direction of an obstacle, or to continue on his planned course. *See* Expert Report at 238-244 ("Expert Report"). His decision in the moment is not the sort of decision that is "so plainly wrong that a competent navigator would have rejected it," and thus under the forgiving standard provided by the *in extremis* doctrine, the Court finds that he acted reasonably under the circumstances and did not breach his duty of care.

Claimants' second argument is that Petitioner John Rogers acted negligently when he failed to keep a proper lookout, such that the wake could have been avoided. Resp. at 6–7. Petitioners in reply argue that Claimants have not provided any evidence to support that assertion. Reply at 6. The Court agrees with Petitioners.

Claimants' argument is that Petitioner John Rogers failed to keep a proper lookout, because the boat that created the wake was visible and moving at excess speed, prior to

---

[3] Citations to Pamela Moynihan's Deposition refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Petitioners' vessel entering the river. Resp. at 6. In this telling, Petitioner John Rogers could have avoided the wake, had he been aware of it.

In supporting this argument, Claimants rely nearly exclusively on the testimony of Lindsey Burnett in supporting this argument. *See* Resp. at 6 (citing Burnett Transcript at 32–33). In her deposition Ms. Burnett testifies that when Petitioners' vessel was moving into the river, the passengers as well as Petitioner John Rogers saw a "bigger boat approaching" that was "not abiding by the wake speed limit." Burnett Transcript at 32–33. She further states that as "the boat . . . [got] close to [Petitioners' vessel] it create[d] a wave, it sh[ook] the boat." *Id.* at 32–33.

The Court cannot find on these facts that Claimants have met their burden in demonstrating that Petitioner acted negligently when they failed to "keep a proper lookout." Ms. Burnett's testimony only demonstrates that Petitioner John Rogers and his passengers could see that the boat that ultimately produced the wake was being operated at an excess speed prior to entering the river. *See* Burnett Transcript at 32–33. It does not prove that Petitioner John Rogers should have seen the vessel earlier, or that if he did he would have been able to avoid the wake.

Accordingly, the Court grants Petitioners Motion for Summary Judgement on the claims that they acted negligently in failing to avoid the wake and failing to keep a proper lookout.

### 2. Causation

"Causation in admiralty[] is properly a two-part analysis: first, factual causation. . . [and] second, proximate or legal causation." Thomas J. Schoenbaum, *Admiralty and Maritime Law* 163 (1994). To prove factual causation, a claimant must "demonstrate that the owner's negligence constituted a 'substantial factor in producing' the injury." *Matter of White*, 603 F. Supp. 3d 58, 74 (W.D.N.Y. 2022) (quoting *in re Nagler*, 246 F. Supp. 3d 648, 658 (E.D.N.Y. 2017)). With regards to proximate cause, a claimant is required to demonstrate that their injuries

are the result of a reasonably probable consequence of the defendant's act or omission. *See* Schoenbaum, *supra* at 163; *Petition of Kinsman Transit Co.*, 338 F.2d 708, 725 (2nd Cir. 1964).

"Summary judgement is warranted [on the issue of causation] where there is an absence of evidence that could 'justify with reason the conclusion that [the tortfeasor's] negligence played any part. . . in producing the injury." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 50 (2d Cir. 2004) (citing *Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d 55, 57–58 (2d Cir. 1986)).

Claimants final two arguments are that Petitioners acted negligently when they: (1) failed to warn Claimants of the impending wake; and (2) operated the vessel at an imprudent speed. The court will address these arguments in turn.

a.   Failure to Warn

Claimants' third argument is that Petitioner Rogers acted negligently when he failed to warn Claimants about the impending wake. Resp. at 4–5. The Court disagrees.

Here, it is undisputed that Petitioners' Vessel was hit by a large wave after passing under the I-81 bridge, that was created when a passing vessel "gunned" its engines. Petrs' SMF ¶ 8–9; Claimants' SMF ¶ 8–9. Claimant Pamela Moynihan and non-party Albert Valerino were seated at the front of the vessel prior to its impact with the wake, and shouted that the wave was coming and alerted their fellow passengers to the danger. Petrs.' SMF ¶ 8–9; Pamela Moynihan's Deposition at 79–80. Claimant Pamela Moynihan moreover had both the time and opportunity to brace herself prior to the wave hitting the vessel. Pamela Moynihan's Deposition at 79–80.

On these facts, the Court cannot find that Claimants have met their burden in demonstrating causation. Claimants have not provided any arguments or any admissible evidence that demonstrates that Petitioner John Roger's failure to warn them about the impending wake

9

was a "substantial factor" in producing her injury. *See generally* Resp.; Claimants' SMF. Indeed, Claimants have not explained how a pre-wake warning could have reduced or prevented Claimant's injuries. *See generally* Resp.; Claimants' SMF.

Accordingly, the Court grants Summary Judgement for the Petitioners on the issue of whether Petitioners acted negligently in failing to warn Claimants of the incoming wake.

b.    Operating the Vessel at an Imprudent Speed

Claimants' final argument is that Petitioner John Rogers acted negligently in operating the vessel at an imprudent speed. Resp. at 4–5. Petitioners counter, arguing that Claimants have failed to demonstrate that a casual link exists between their injuries and the excess speed of the vessel. Reply at 5. The Court agrees with Petitioners for the reasons stated below.

At the Summary Judgment stage, a Claimant is required to prove with admissible evidence, that the vessel owner's alleged negligent act was a "substantial factor in producing" their injury. *See in re Nagler*, 246 F. Supp. 3d at 658. It is not enough to establish that a vessel was being operated at an excessive speed; Claimants must demonstrate that the excess speed was a substantial factor in producing their injuries. *See e.g.*, *Lugo v. Daytona Auto Sales, Inc.* 184 A.D. 3d 430 (N.Y. 1st Dept. 2020) (noting that the fact that Plaintiff "may have been driving over the posted speed limit was insufficient to raise an issue of fact as to comparative negligence since there was no evidence that it could have contributed to the collision."); *Matter of White*, 603 F. Supp. 3d at 74.

Claimants have failed to do so in this case. In their Response, they suggest that merely because Petitioners have not disputed that Claimant Pamela Moynihan was injured in the incident that "causation and damages are not at issue!" Resp. at 6. They do not explain how

10

Petitioners' operation of the Vessel at an excess speed is connected with Petitioner Pamela

Moynihan's injuries. *See generally* Resp.

Accordingly, the Court grants Petitioners' Motion for Summary Judgment on the claim

that they acted negligently when they operated the vessel at an imprudent speed. [4]

### V.    Conclusion

Accordingly, it is hereby:

**ORDERED**, that Petitioners' Motion for Summary Judgment, Dkt. No. 25 is

**GRANTED**; and it is further,

**ORDERED**, that the Clerk is respectfully directed to enter judgment and close this

action;

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 27, 2026
            Albany, New York

LAWRENCE E. KAHN
United States District Judge

---

[4] The Court acknowledges that Petitioner and Claimant dispute whether the Vessel was "complying with the controlling speed restrictions." Claimants' SMF ¶ 11 (cleaned up). However, the Court does not find this dispute to be material. The issue regarding the Vessel's speed at this stage in the case, is whether its alleged excessive speed was causally connected with the injuries suffered by Claimants. As mentioned, *supra* at 11, Claimants have failed to do so in this case. Therefore, the actual speed of the Vessel is not necessary in the disposition of the case and is accordingly not a material fact.